Smith *v.* Vreeland et al.

---

Charles J. Smith *vs.* George Vreeland and wife and others.

1. A gift of money to a married woman in 1848, being made without a settlement upon her, as well as her earnings during coverture, are the property of the husband.

2. A voluntary conveyance to a married woman by her husband, while he is embarrassed by debts, is fraudulent and void as against creditors.

3. Equity will protect the title of a *bona fide* purchaser for value, without notice of fraud, though he purchase from a person with notice.

4. A purchaser with actual or constructive notice of fraud, though he pay a valuable consideration, takes title subject to all the equities to which it was liable in the hands of the vendor. In such case he will not be per-

mitted to protect himself against such claims, but his own title will be postponed and made subservient to them.

5. A purchaser is presumed to have knowledge of all the facts disclosed by the deeds under which he claims title.

6. A purchaser cannot claim to be a *bona fide* purchaser without notice, where the facts patent upon the face of his title and under his immediate observation, are sufficient to put him upon inquiry.

7. Where a creditor comes into equity to remove fraudulent encumbrances or conveyances out of the way of his execution at law, the effect of the decree is simply to declare the creditor's claim an encumbrance upon the property, in preference to the fraudulent encumbrance or alienation.

8. Where a party has proceeded to a sale under his execution at law, and become himself the purchaser of the property for a very inadequate consideration, the court will not set aside the prior conveyances, and perfect the title under the execution, to the prejudice of other judgment creditors. All that the complainant can ask in equity is the payment of his debt. If his legal rights are more extensive, they must be enforced at law.

The case was disposed of upon final hearing upon the bill, answer and proofs.

*Weart,* for complainant, cited 1 *Story's Eq. Jur.,* § 408, *a,* and note 5; *Dunlap's Paley's Agency,* (4th Am. ed.) 262 *and notes*; *Dart's Vendor (Waterman)* 404, 408, note 1, 407, note 2; *Newkirk* v. *Morris,* 1 *Beas.* 64; *Eameston* v. *Lyde,* 1 *Paige* 637; *Journeay* v. *Brown,* 2 *Dutcher,* 111; *Edwards on Receivers* 362; 2 *Barb. Ch. Pr.* 157; *Corning* v. *White,* 2 *Paige* 567; *McDermutt* v. *Strong,* 4 *Johns. Ch. R.* 687; *Wilson* v. *Allen,* 6 *Barb. S. C. R.* 545.

*Fleming,* for Vreeland and wife, cited *Roberts on Fraud. Con., ch.* 4, § 10, *p.* 497; *Disborough* v. *Outcalt, Saxton* 298; *Broom's Leg. Max.* 561; *Jones* v. *Naughright,* 2 *Stockt.* 301; *Halsted* v. *Davison, Ibid.* 295; *Garr* v. *Hill,* 1 *Ibid* 215; *Owen* v. *Arvis,* 2 *Dutcher* 43; *Hendricks* v. *Mount,* 2 *South.* 743.

*Slaight,* for Mrs. Scott.

THE CHANCELLOR. The bill is filed by an execution creditor of David Scott, to set aside as fraudulent certain convey-

ances, by which the legal title to the real estate of the debtor was transferred to Vreeland.

The judgments were originally obtained by Abraham T. Russell, upon two promissory notes made by Scott to Stephen W. Smith, and by him endorsed to Russell. The notes were given for debts due from Scott to Smith, and were discounted by Russell for the accommodation of the endorser. The judgment being unsatisfied, and Smith being liable as endorser for the debt, procured his brother, Charles J. Smith, to advance the money, and take an assignment of the judgment in his own name. Had the debt been paid by the endorser he would have been entitled in equity as surety, to all the securities held by the creditor against the debtor. If it be true as alleged in the answer, that Stephen W. Smith is the real complainant, striving to secure the payment of a debt from his debtor, he is clearly entitled to the benefit of the judgment. Charles J. Smith, the assignee of the judgment, is the owner in equity, and entitled to the same protection as the original plaintiff in the judgment. It is immaterial, therefore, which of the parties is the real complainant in the cause. The suit is obviously for the benefit of the endorser.

The defence set up by Scott and wife in their answer, cannot be sustained. When the suit was commenced against Scott, upon which the first judgment was recovered, he was the owner of considerable real and personal estate, and was embarrassed by debts, if not actually insolvent. On the twenty-second of September, 1860, the day on which the summons was returnable, he conveyed the real estate in question to David Bedford, by deed with covenants of general warranty, the wife joining with her husband in the conveyance. On the eighth of October, Bedford and wife reconveyed the premises to the wife of Scott. The consideration expressed in both deeds was $4000. It is admitted by the answer that no consideration whatever was paid for either conveyance. The deeds were purely voluntary. Bedford admits that he had no interest in the premises. He took title merely for the benefit of the wife. This transaction is attempted to be

justified by the allegation that in 1848, the wife received about $500, as a gift from her mother, with which, for about seven years, she carried on the millinery business in her own name and on her own account, and was thereby enabled to advance money to her husband, with which the property in question was purchased. There is no evidence whatever in support of this allegation. If it were fully proved it constitutes no defence. The gift to the wife in 1848, being made without a settlement on the wife, as well as the earnings of the wife during coverture, are the property of the husband. A conveyance of the property to her, while the husband is embarrassed by debts, is fraudulent and void as against creditors. The subject was under consideration in the case of *Belford* v. *Crane,* decided at the present term, and in *Skillman* v. *Skillman,* 1 *Beas.* 403. It did not seem to be seriously contended by counsel upon the argument, that this title in Mrs. Scott was valid as against the creditors of the husband. But it was urged that Vreeland was a *bona fide* purchaser for value, without notice of the fraud, and that his title was therefore valid. The principle that a *bona fide* purchaser for value, without notice of the fraud may protect his title, though he purchase from a person with notice, is too clearly established to admit of question, 1 *Story's Eq.,* § 409, 410.

But the principle is equally clear, that if he purchase with actual or constructive notice of the fraud, though he pay a valuable consideration, he takes title, subject to all the equities to which it was liable in the hands of the vendor. In such case he will not be permitted to protect himself against such claims, but his own title will be postponed and made subservient to them. 1 *Story's Eq.,* § 395.

Vreeland claims title under the wife, not under the husband. The purchase was made (so the answer alleges) from her. The husband was induced to join in the deed, merely because the deed of the wife without his consent, was void. He cannot make out his title but through the deed from Scott and wife to Bedford, and from Bedford back to Mrs. Scott,

and he is presumed to have knowledge of all the facts which those deeds disclosed. 1 *Story's Eq. Jur.*, § 400.

He knew then that this property had been conveyed from Scott to Bedford for the alleged consideration of $4000, and immediately thereafter reconveyed from Bedford to the wife for the same consideration. He knew that when the deed from Scott to Bedford was executed, Scott was overwhelmed with debt. Vreeland himself was among the number of his creditors. He knew that Mrs. Scott had no means of paying $4000 for the property. He was familiar with the condition of her affairs, and had from time to time, before the execution of the deed, been advancing money at her instance to redeem the property from sales made for payment of taxes and assessments. He had, at her instance, purchased a mortgage upon the property, which was being pressed for payment. He knew that the deed from Scott to Bedford was promptly placed upon record, and that the reconveyance from Bedford to the wife was not recorded. It was in fact placed upon record at the same time with the deed from the wife to Vreeland. He is presumed to have known these facts, because a purchaser has no right, where the interests of others are involved, to close his eyes to facts patent upon the face of his title and under his immediate observation. They were at least sufficient to have put him upon inquiry, and to deprive him of the character of a *bona fide* purchaser without notice. It cannot be, where a husband on the eve of insolvency, pressed by his creditors, with actions pending against him, conveys to a third party who conveys directly back to the wife for the same alleged consideration, that a purchaser with knowledge of these facts can claim to be a *bona fide* purchaser without notice. The case is greatly strengthened when the purchaser appears to be a relative and friend of the wife, who claims that the legal title was made to her for the mere purpose of perfecting a previous equitable interest. It seems in the highest degree improbable that the purchaser should not have been fully acquainted

with the real character of the deed from Bedford, and with the nature of the wife's title.

That Scott and his wife designed to protect this property from the husband's creditors, is abundantly evident. It is in fact avowed and attempted to be justified by their answer. There is persuasive evidence that there was complicity in this design between Vreeland and the Scotts. The judgment to Vreeland was confessed, and an execution levied upon the defendants' personal property, while the complainant's suit was pending. After the complainant's execution was issued, the entire personal property was sold and purchased by Vreeland, the proceeds being applied toward the satisfaction of the execution. On the first of March following, the property thus purchased was transferred to Mrs. Scott for $850. The execution remained unsatisfied, no steps apparently having been taken by Vreeland to secure the balance of his debt. On the twenty-first of May, on the petition of the plaintiff in the complainant's judgment, an order was made by the judge of the Hudson Circuit for the examination of Scott, under the act to prevent fraudulent trusts and assignments. Of that fact the attorney of Vreeland had notice. The fact was immediately communicated to the attorney of Scott. The order was served on Scott on the twenty-second of May, but he failed to appear to be examined. Bedford, to whom Scott had conveyed, was examined on the twenty-ninth of May. On the twenty-eighth, the very day before his examination and the disclosure of the fact that the conveyance to him from Scott, and the reconveyance to Mrs. Scott, were voluntary, Scott and wife conveyed to Vreeland. The deed is dated on the preceding first of March, so as to appear to have been executed previous to the institution of proceedings against Scott for fraud. Notwithstanding the denials of the answer, it is difficult to reconcile these facts with the idea of good faith on the part of Vreeland in taking title.

I have had much difficulty in regard to the proper relief to be administered. It is usual for creditors, after exhaust-

ing their legal remedy against property, the legal title to which is in the defendant, to come into equity to remove fraudulent encumbrances or conveyances out of the way of execution at law. In such case, the effect of the decree is simply to declare the creditors claim an encumbrance upon the property, in preference to the fraudulent encumbrance or alienation. But in this case the complainant, proceeding on the assumption that the conveyances which he now seeks to avoid were null and void, has proceeded to a sale under his execution at law, although the title had been conveyed out of the defendant in execution, and has himself become the purchaser for a very inadequate price. He now asks this court, by its decree, to declare the previous conveyances fraudulent, and thus confirm his title. The balance due on his judgments at the time of the sale, amounted to about $300. The value of the property, according to the testimony of his witnesses, was $3000, exceeding by about $1300 the amount of the encumbrances upon it. The defendant is also a judgment creditor, having a balance due on his judgment of over $600, double the amount of the debt due to the complainant. The *bona fides* of this judgment has not been called in question. The property is sufficient, according to the evidence, to satisfy both judgments. All that the complainant can ask in equity is, that his debt shall be paid. If his legal rights are more extensive they must be enforced at law, without the aid of this court. Though he has acquired a legal advantage over the prior judgment of the defendant, there is no reason why he should be permitted to speculate upon that advantage at the expense of the defendant. After the complainant's debt is satisfied, the balance of the debtor's property should in equity be applied to satisfy the debt due to Vreeland.

The legal fraud imputed to him involves no moral turpitude. He may have been prompted by honest motives in his attempt to shield property to which the wife claimed title, against the claims of the husband's creditors. All that the complainant can demand is, that his judgment shall con-

stitute a lien upon the property in the hands of Vreeland. Upon that claim being satisfied, his title to the property should be surrendered. If the claim of the complainant be not satisfied, the property will be decreed to be sold, subject to legal encumbrances, and the proceeds applied to satisfy first the judgment of the complainant, and then the judgment of Vreeland.